UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DECOZEN CHRYSLER JEEP CORP., d/b/a DECOZEN CHRYSLER JEEP DODGE RAM,<br><br>               Plaintiff,<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES, LLC,<br><br>               Defendants. | Civil Action No.  22-CV-68<br><br>**COMPLAINT<br>AND DEMAND FOR JURY TRIAL**<br><br>Electronically Filed |

Plaintiff DECOZEN CHRYSLER JEEP CORP. d/b/a DECOZEN CHRYSLER JEEP DODGE ("DeCozen"), a New Jersey corporation, by way of its Complaint against Defendants FIAT CHRYSLER AUTOMOBILES, LLC, ("FCA") a Delaware LLC, with their principal place of business in Auburn Hills, Michigan, alleges as follows:

## THE PARTIES

1.     Plaintiff DeCozen is a New Jersey Corporation with its principal place of business at 225 Bloomfield Avenue, Verona, New Jersey 07044.

2.     DeCozen operates a retail automobile business at or around 225 Bloomfield Avenue, Verona, New Jersey, which includes, *inter alia,* franchised operations pursuant to Dealer Agreements with FCA US, LLC ("FCA US") for the sales and service of Chrysler, Jeep, Dodge and Ram motor vehicles and products.

3.     The Dealer Agreements constitute franchises pursuant to N.J.S.A. §§ 56:10-3(a), and DeCozen is a franchisee as defined in N.J.S.A. §§ 56:10-3(d).

4.     FCA solely drafts the language of dealer agreements, without input from or negotiation with its franchised dealers, including DeCozen.

5.     The language and terms of dealer agreements are proffered by FCA to approved dealers on a "take-it-or-leave it" basis.

6.     FCA's dealer agreements are classic agreements of adhesion, as FCA has overwhelmingly superior bargaining power, and dealers including DeCozen, lack the ability to call for change to the basic provisions or language of Dealer Agreements.

7.     As in many states, New Jersey has enacted laws, including the New Jersey Franchise Practices Act, N.J.S.A. § 56:10-1 *et seq.*, amended many times over the years, to alleviate overreaching and unreasonable contractual provisions drafted by franchisors, as well as their conduct, to unreasonably dominate the operations and facilities of dealers such as DeCozen.

8.     In New Jersey, applicable franchise law must be interpreted broadly and liberally to satisfy the legislative intent to allow dealers to overcome unreasonable actions and/or requirements by the automotive franchisors.

9.     Upon information and belief, Defendant FCA, formerly known as Chrysler Group, is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 1000 Chrysler Dr., Auburn Hills, Michigan 48326.

10.     FCA sells, markets and distributes, *inter alia*, Chrysler, Dodge, Jeep and Ram vehicles throughout the United States to a retail network of franchised motor vehicle dealers who retail products and services to the public.

11.     At times relevant herein, FCA has engaged in the business of manufacturing and assembling new motor vehicles and parts for several vehicle lines, including Chrysler, Jeep,

Dodge, and RAM motor vehicles, and has sold and distributed these vehicles to dealers that compose a worldwide distribution network.

12.     In the United States the retailing and servicing of vehicles branded by FCA is accomplished through franchised motor vehicle dealerships, such as DeCozen.

13.     FCA alone exercises significant control over the dealers who make up the networks of FCA brands.

14.     At times relevant herein, DeCozen was and is a FCA motor vehicle franchisee (also commonly termed "dealer" or "dealership") actively and principally engaged in the business of buying, selling, exchanging, and servicing motor vehicles and parts of the Chrysler, Jeep, Dodge and RAM brands that FCA manufactured and/or distributed.

15.     As a matter of New Jersey and federal law, the FCA franchisor has a franchise relationship with DeCozen.

## THE ACTION

16.     This is an action for declaratory and injunctive relief, damages, compensatory and punitive, and costs of suit and attorneys fees for claims arising under the New Jersey Franchise Practices Act ("NJFPA"), federal and state statutory and regulatory law, the Dealer Agreements between the parties and the common law.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over the claims in this action under 28 U.S.C. § 1332, *et seq.* because DeCozen is a New Jersey corporation and FCA is a Delaware LLC with its principal offices in Auburn Hills, Michigan.

18.     This Court has personal jurisdiction over the Defendant pursuant to 18 U.S.C. § 1965.

19.     Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. §1391(b)(c).

20.     New Jersey law applies to, *inter alia*, the NJFPA claims, specifically authorized by, *inter alia*. N.J.S.A. § 56:10-10.

## GENERAL ALLEGATIONS

### The New Jersey Franchise Practices Act

21.     The relationships between DeCozen and FCA constitute franchises within the meaning of N.J.S.A. § 56:10-1 *et seq.* ("New Jersey Franchise Practices Act" hereinafter "NJFPA") and 15 U.S.C. § 1221 *et seq.* ("Automobile Dealers' Day in Court Act," hereinafter "ADDCA").

22.     The provisions of the NJFPA and ADDCA apply to DeCozen's relationship with FCA, irrespective of any contractual choice of law elsewhere.

23.     The NJFPA is "intended to rectify [the] lack of equal bargaining power" between the franchisor and franchisee. *Westfield Centre Service, Inc. v. Cities Service Oil Co.,* 158 N.J. Super. 455, 475 (Law Div. 1978), *aff'd* 172 N.J. Super. 196 (App. Div. 1980), *aff'd* 86 N.J. 453 (1981).

24.     The NJFPA is "a remedial measure which should be broadly construed to prevent [an] unfair result." *Westfield*, 158 N.J. Super. at 475.

25.     The New Jersey legislature recognized this unequal bargaining power in enacting the NJFPA, expressly stating, "Notwithstanding the enactment of the 'Franchise Practices Act' … and other legislation dealing with the franchisor-franchisee relationship … inequality of bargaining power continues to exist between motor vehicle franchisors and motor vehicle franchisees. This inequality of bargaining power exists even as to motor vehicle franchisees who have had their franchises for many years and who have expended large sums of money in the promotion of their franchises." N.J.S.A. § 56:10-7.2.

26.     Under the NJFPA, a franchisor that imposes an unreasonable standard of performance upon a franchisee violates, *inter alia*, N.J.S.A. § 56:10-7.4.

27.     A central purpose of the NJFPA is to protect franchisees, like DeCozen, from the exercise of superior bargaining power of franchisors, like FCA, and to provide swift and effective judicial relief against franchisors that violate the NJFPA.

**The Parties' Relationship**

28.     Since about 1985, DeCozen has been an authorized dealer, dealership and/or franchisee of FCA and authorized to sell and service new Chrysler, Jeep, Dodge, and RAM vehicles.

29.     Each of the four Dealer Agreements between DeCozen and FCA constitute a franchise.

30.     DeCozen and FCA entered into Dealer Agreements for, *inter alia*, the sales and service of FCA motor vehicles including the Chrysler, Jeep, Dodge and RAM brands.

31.     "Dealer Agreements," as used herein, means collectively those certain Chrysler, Jeep, Dodge, RAM Sales and Service Agreements by and between DeCozen, as dealer, and FCA, as manufacturer/franchisor and related agreements incorporated therein, pursuant to which FCA authorizes DeCozen to, among other things, purchase, display, sell at retail and service new Chrysler, Jeep, Dodge and RAM vehicles, parts and accessories at DeCozen's approved dealership facilities.

32.     In business for over thirty years, DeCozen is a successful FCA franchisee, providing excellent sales and service to consumers who mainly reside and/or work in or near the counties of Essex, Union, Passaic and Morris.

33.     Pursuant to the Dealer Agreements, DeCozen is required to maintain certain minimum working capital, adequate facilities and land for sales and service with respect to size, appearance and layout, minimum management and staff personnel, and minimum service satisfaction ratings, all to the great expense, time, and effort of DeCozen, and to the great benefit of FCA.

34.     At all times, DeCozen provided outstanding sales and service for the consuming public, for the benefit of its retail customers, the dealership and its employees, and has favorably impacted the image and well-being of the franchisor FCA.

35.     As a FCA dealer purchasing vehicles and parts, DeCozen is a "customer" of FCA.

36.     DeCozen has made substantial investments, totaling millions of dollars, into the facilities and operation of the franchise in Verona, New Jersey.

37.     DeCozen provides employment for dozens of New Jersey citizens.

38.     DeCozen is permitted to make sales of FCA branded motor vehicles to, and provide service for, customers irrespective of where they reside.

39.     Each of the Dealer Agreements sets "forth the undertaking of this relationship, the success of those undertakings rests on a recognition of the mutuality of interests of [DeCozen] and [FCA] and a spirit of understanding and cooperation by both parties in the day to day performance of their respective functions."

40.     These agreements evidence "a community of interest" shared by DeCozen and FCA as prescribed in N.J.S.A. § 56:10-3(a).

41.     DeCozen advertises throughout Verona, Essex, Passaic, Morris and Union Counties and Northern New Jersey generally through broadcast, cable and print media in compliance with the Dealer Agreements' Additional Terms and Provisions.

42.     DeCozen also operates a website to advertise, *inter alia*, its sales and service of Chrysler, Dodge, Jeep and RAM motor vehicles. *See* https://www.decozenchryslerjeepdodge.com.

**FCA's Control of the Franchised Dealer Network**

43.     The maintenance and control of FCA's dealer network is solely with FCA, with no input from dealers such as DeCozen and FCA unilaterally determines a dealer's Trade Zone, Sales Locality and MSR.

44.     FCA exercises control over, and says it monitors, dealers for the benefit of the dealer network.

45.     Each FCA dealer, like DeCozen, has an assigned "Trade Zone" which is comprised of census tracts surrounding and near the dealership.

46.     For each dealer, FCA unilaterally assigns a so-called Minimum Sales Responsibility, ("MSR"), which is established and prescribed by FCA from time to time.

47.     FCA says it uses the MSR metric to determine the number of sales it expects from its dealers and therefore the effectiveness of its dealers in selling its vehicles.

48.     According to FCA, it then applies a fair share calculation which it deems to account for its brand popularity or unpopularity at a Trade Zone level.

49.     FCA says it uses "fair share" to calculate how many vehicles of a given product segment were sold within the dealer's Trade Zone and Sales Locality, and then averages the statewide measure with the Sales Locality measure to determine what the fair share of sales would be for a dealer in that Sales Locality.

50.     Fair share, according to FCA, seeks to assess the relative importance of a dealer's immediate area of influence as compared with the Sales Locality as a whole.

51.     Dealers are tasked with selling enough vehicles each month to attain 100% MSR which is considered an average score.

52.     FCA says that MSR is calculated through a formula that accounts for two basic variables: vehicle registrations and geography (Trade Zones and Sales Locations).

53.     Only FCA knows the factors that it uses in calculating its brand popularity or unpopularity at the Trade Zone level.

54.     MSR assumes that anything below 100% is an inadequate sales performance and a failing grade.

55.     If actual sales depart from the expected sales under MSR, FCA attributes those lost sales solely to the quality of the dealer's sales performance.

56.     The MSR and Fair Share, in addition to assessing sales performance, are metrics used by FCA to measure dealers for the purpose of incentives and bonuses.

57.     Upon information and belief, FCA's various "metrics" lack any sound or tested statistical reliability or validity.

58.     DeCozen is required to use its best effort to promote and sell at retail, models of Chrysler, Jeep, Dodge and RAM vehicles within DeCozen's "Sales Locality" and to meet FCA's so-called MSR, as unilaterally established by FCA.

59.     FCA is required in *good faith* to establish DeCozen's MSR based upon defined ratios and to adjust the MSR by taking into account, *inter alia*, local conditions, revisions in Sales Locality, recent trends in sales performance and any other factors because in New Jersey, "[i]t shall be a violation of [the NJFPA] for [FCA] … to impose unreasonable standards of performance or unreasonable facilities, financial operating or other requirements upon" DeCozen.  N.J.S.A. § 56:10-7.4(a).

60.     To meet or exceed a dealer's MSR or Fair Share, it is imperative that FCA provide adequate motor vehicle inventory to the Dealer.

61.     For years, FCA utilized a "turn and earn" method to supply dealers with new inventory for sale to consumers.

62.     Without sufficient inventory, a dealer's retail sale of FCA motor vehicles is hindered.

63.     FCA has failed to supply DeCozen with adequate vehicle inventory although it has provided more than adequate inventory to nearby competing dealers.

64.     For example, FCA has provided a nearby dealer with one-hundred and twenty-five new RAM pickup trucks but only provided fifteen to DeCozen.

65.     Since July 2021, DeCozen has had sixty-three RAM pickup trucks on order but FCA never delivered the trucks to DeCozen.

66.     Another example is the popular Jeep Grand Cherokee, for which DeCozen has been allotted one (1) vehicle while the other nearby dealer has been allotted one-hundred one (101).

67.     Upon information and belief, from time to time FCA implements "incentive" programs, which, in ways described for each program, seek to "incentivize" new FCA vehicle sales with discounts, rebates, bonus payments and the like.

68.     The administrative aspects of such programs are purportedly governed by publications issued by FCA.

**DeCozen's Sales and Service of FCA Motor Vehicles**

69.     DeCozen is located in an urban/suburban market with its address in Verona, New Jersey.

70.     DeCozen is the only FCA dealer in Essex County, New Jersey and it is surrounded by FCA dealers in the adjacent counties of Morris, Passaic, Union and Bergen.

71.     Within a twenty (20) mile radius of the DeCozen dealership, there are over seven FCA branded dealers.

72.     Customer purchase and lease transactions are almost always negotiated and consummated at the DeCozen location in Verona, New Jersey, and most deliveries of retailed new and used vehicles also occur there.

73.     Since March 2020, DeCozen has serviced its customers by providing at-home delivery of vehicles or on-site deliveries with strict COVID guidelines in place.

74.     FCA also purports to prescribe levels of performance with respect to measurements of customer satisfaction through a so-called Customer Satisfaction Index (CSI), which is administered solely by FCA and or its agents.

75.     By FCA's CSI tabulations, DeCozen's CSI performance is deemed excellent.

**FCA's Advertising Requirements For Dealers**

76.     With a growth of internet shopping, especially since the COVID pandemic struck the United States, a dealership does not necessarily enjoy the same "home town" consumer preference it might once have had.

77.     Home shopping through Dealer websites has become a new norm.

78.     The State of New Jersey imposes advertising requirements on automobile dealerships in Administrative Regulations codified at N.J.A.C. § 13:45A-26 *et seq.* that apply to all forms of advertising, including, but not limited to, dealer websites.

79.     Each year, DeCozen is required to spend tens of thousands of dollars to purchase advertising in local news and radio media which must meet state and federal requirements.

80.     Upon information and belief, FCA monitors its dealers' advertisements, not just in print and radio, but also on each dealer's website.

81.     Based on the Dealer Agreements, it is the mutual goal of the parties' relationship "to promote the sale and service of [FCA] products by maintaining and advancing their excellence and reputation by earning, holding and furthering the public regard for [FCA] and [FCA] dealers."

82.     Deviation from the advertising requirements or the parties' mutual goal can be cited as a purported basis for termination of the Dealer Agreements.

83.     Specifically, the Dealer Agreements provide for possible franchise termination of a dealer for "conduct by Dealer which, in Dealer's dealings with customers or the public, is fraudulent or constitutes a deceptive or unfair act or practice."

**FCA's Relationship with DeCozen**

84.     Beginning in or around 2016, DeCozen requested that FCA review and re-calculate DeCozen's Trade Zone, MSR and Fair Share due to conditions in the Sales Locality.

85.     The purpose behind revising the Trade Zone was to reflect accurate local conditions that would reduce DeCozen's MSR and Fair Share.

86.     For example, DeCozen's facility in Verona, New Jersey is surrounded by dealerships who receive more inventory from FCA and whose Trade Zones have encroached upon or overlapped DeCozen's Trade Zone.

87.     Verona, New Jersey is an urban/suburban location in Essex County in close proximity to a number of Passaic and Morris County municipalities.

88.     Verona has a total area of 2.82 square miles and a population, as of 2018, of 13,420.

89.     Verona is a mostly residential community with a commercial business zone located on Bloomfield Avenue.

90.     Larger dealers in surrounding counties advertise and sell into DeCozen's Trade Zone.

91.     Nevertheless, DeCozen is a competitive, high performing FCA dealership that provides excellent sales and service to its customers for FCA motor vehicles.

92.     Over the last two years, DeCozen has been faced with FCA changing programs and past performance in a way best described as FCA moving the "goal posts" for success in meeting its MSR, CSI and other FCA performance metrics.

93.     It has also been faced with FCA sending advertisements and special deals directly to DeCozen's retail customers, advising them to obtain service or a new car from other FCA dealers.

94.     In addition to moving the goal posts for vehicle sales, FCA has provided inadequate inventory to DeCozen, mostly, an absence of high public demand vehicles such as the Jeep Wrangler.

95.     For example, in the summer of 2020, another FCA dealership was going out of business and DeCozen was able to purchase Jeep Wranglers from that dealership to place into its inventory.

96.     DeCozen sold those Jeep Wranglers in sixty days.

97.     When DeCozen contacted its FCA representative for more Jeep inventory, based on the long-standing standard of "turn and earn," it was informed that FCA no longer followed that practice and now a dealer could only earn, in inventory, one new vehicle for every three sold.

98.     FCA never supplied DeCozen with the requested inventory, in contradiction of its prior representation.

99.     FCA has not supplied DeCozen with adequate inventory of popular FCA models such as the new RAM TRX, the new Jeep Wranglers, Jeep Cherokee and the new Wagoneer.

100.    FCA's failure to provide adequate inventory is an obstruction to DeCozen's ability to meet the FCA imposed performance metrics – MSR, Fair Share, and CSI.

101.    DeCozen has communicated with FCA on numerous occasions, orally and in writing, regarding the issues complained of herein.

102.    FCA continues to be in breach of its agreement to re-calculate DeCozen's MSR, Trade Zone and Fair Share metrics.

103.    Moreover, upon information and belief, FCA has failed to monitor, maintain and enforce the Dealer Agreement requirements on dealers in the areas surrounding DeCozen's dealership.

104.    Most apparent is FCA's failure to enforce website guidance with multi-location dealerships and their website advertising practices.

105.    By way of example, but not by limitation, automobile dealers in New Jersey are required to advertise only motor vehicles that they have available in inventory at a certain location. N.J.A.C. § 13:45A-26A.10.

106.    Thus, if a dealer does not have a vehicle at its dealership facility, or in transit to its facility, it would be a violation of the New Jersey Administrative Code, and New Jersey Consumer Fraud Act, to advertise to the public that such a motor vehicle is part of its stock.

107.    In multi-franchise dealerships, each location, upon information and belief, is owned by a separate entity and, upon information and belief, when FCA ships a vehicle to that location, the Manufacturers Certificate of Origin identifies the dealer and the location.

108.    However, certain multi-franchise dealers in New Jersey advertise that they have thousands of vehicles in stock by combining all of the inventory available at their multiple locations.

109.   If a consumer visits only one of the multi-franchise locations, the advertised vehicle on the website which is combined inventory may not be available at the specific location visited by the consumer.

110.   By combining the inventory of all locations for viewing by the consumer on the world-wide-web, the multi-franchise owners violate the New Jersey Administrative regulations for automobile dealer advertising, thus committing a deceptive practice or act as defined by New Jersey law.

111.   DeCozen has informed FCA, in writing and orally, of the multi-franchise dealers' regulatory violations and deceptive practices but FCA has taken no action and has thus failed to maintain and protect the dealer network as required by the Dealer Agreements.

112.   Further, a growing problem in the State of New Jersey is that FCA franchised dealers use non-franchised automobile brokers that sell FCA motor vehicles directly to consumers.

113.   In New Jersey, the engaging in the sale of motor vehicles requires a license issued by the State.

114.   Specifically,

> "Business of buying, selling or dealing in motor vehicles" means engaging in the business of buying or selling motor vehicles on one's own account or on behalf of another or participating in any transaction, including the brokerage or auctioning of motor vehicles, which transaction involves the transfer of title or of legal or beneficial ownership of a motor vehicle.

N.J.A.C. § 13:21-15.1.

115.   Upon information and belief, multiple FCA dealers use automobile brokers for sales involving New Jersey consumers.

116.    DeCozen has notified FCA of the other dealers use of brokers and FCA is fully aware of the dealers that engage in this practice but has not taken any action to prevent the FCA dealers from doing so.

117.    In failing to take action with its dealer network, FCA has failed to protect its dealer network and allowed dealers to use non-franchised, unlicensed automobile brokers.

118.    Without taking curative action, FCA's breaches of the Dealer Agreements are continuing.

119.    Moreover, DeCozen also learned that one of its customers that purchased a vehicle from the dealership was directed by FCA to take the vehicle to another dealership for maintenance and service.

120.    When DeCozen sells a vehicle to a consumer it considers that consumer's information to be confidential and proprietary to it.

121.    In directing the customer to use another dealer for maintenance and service, FCA misused DeCozen's confidential and proprietary customer information and conferred a benefit to one of DeCozen's competitors, and also violated the privacy rights of those consumers.

122.    These improper actions, derelictions and breaches have caused, and continue cause irreparable harm and damages to DeCozen that cannot be adequately compensated in money damages.

123.    Decozen lacks full remedies at law.

### FIRST COUNT
**(Violation of New Jersey Franchise Practices Act N.J.S.A. § 56:10-16 *et seq.*)**

124.    DeCozen repeats and realleges the allegations set forth in the previous paragraphs as if fully set forth herein.

125.    FCA's conduct as set forth in detail above constitutes violations of the New Jersey Franchise Practices Act, 56:10-1 *et seq.*

126.    By continuing to impose unreasonable standards of performance on DeCozen, including but not limited to MSR, FCA is in violation of the express provision of N.J.S.A. § 56:10-7.4.

127.    Moreover, FCA is violating the NJFPA by consciously disregarding the harm being caused to its dealer network and DeCozen, by other dealers' advertising methods and their use of sales brokers.

128.    Further, in favoring nearby dealers of DeCozen for the provision of FCA motor vehicle inventory, FCA has violated the NJFPA.

129.    FCA's conduct is a direct and legal cause of DeCozen's economic loss.

130.    FCA's actions and inactions have caused DeCozen substantial economic deprivation, harm and damages for which FCA is liable to DeCozen.

131.    DeCozen lacks full remedies at law.

**WHEREFORE**, DeCozen demands judgment against FCAs as follows:

(a)    Declaring that FCA violated N.J.S.A. § 56:10-1 *et seq.*;

(b)    Permanently enjoining FCA from the unlawful activities herein described.

(c)    Awarding DeCozen all damages, compensatory and punitive,  arising from FCA's violation of N.J.S.A. § 56:10-1 *et seq.*;

(d)    Awarding court costs and reasonable attorney's fees; and

(e)    Awarding such other, further and additional relief to DeCozen as this Court deems just and proper.

## SECOND COUNT
### (Declaratory Judgment – N.J.S.A. § 2A:16-51 *et seq.*)

132.    DeCozen repeats and realleges the allegations set forth in the previous paragraphs as if fully set forth herein.

133.    Within the meaning of N.J.S.A. § 2A:16-51 *et seq.*, an actual controversy within the jurisdiction of this Court exists between DeCozen and FCA, and DeCozen seeks a declaration of its rights and other legal relations as well as the rights and legal relations of DeCozen as follows:

(i)     Declaring that FCA has violated N.J.S.A. § 56:10-7.4 by imposing upon DeCozen unreasonable performance and operations standards;

(ii)    Declaring that FCA has violated N.J.S.A. § 56:10-7.4(a) in imposing unreasonable operating requirements upon DeCozen by failing to provide adequate inventory;

(iii)   Declaring that FCA's intentional disregard of the factors affecting DeCozen's Trade Zone and Sales Locality is unilateral, impermissible action in violation of N.J.S.A. § 56:10-1 *et seq.*

(iv)    Declaring that FCA's intentional disregard for the dealer network in allowing other dealers to violate advertising laws is violation of FCA's obligation to control the FCA dealer network;

(v)     Holding that FCA has been damaged by FCA's violations, breaches and misconduct; and

(vi)    Declaring that FCA's intentional disregard of the fact that its dealers are using automobile brokers, in violation of New Jersey law, is a violation of FCA's obligation to control the FCA dealer network.

134.    DeCozen lacks full remedies at law.

**WHEREFORE**, DeCozen demands judgment against FCA as follows:

(a)    Declaring that FCA violated N.J.S.A. § 56:10-1 *et seq.*;

(b)    Enjoining FCA from the unlawful activities herein described.

(c)    A declaration that FCA has violated DeCozen's rights, under N.J.S.A. § 56:10-7.4, in imposing unreasonable performance standards upon DeCozen;

(d)    A declaration that FCA has violated DeCozen's rights, under N.J.S.A. § 56:10-7.4, in imposing unreasonable operating requirements upon DeCozen;

(e)    A declaration that FCA's intentional disregard of the factors affecting DeCozen's Trade Zone and Sales Locality is unilateral, impermissible action in violation of N.J.S.A. § 56:10-1 *et seq.* and the Dealer Agreements;

(f)    A declaration that FCA's intentional disregard of other dealers' violation of state advertising laws and other dealers' use of automobile brokers in violation of state law is a breach of the express provisions of the Dealer Agreements in which FCA agreed to control its dealer network for the mutual benefit of the parties.

(g)    An order and judgment requiring FCA to modify or adjust DeCozen's Trade Zone and Sales Locality, including but not limited to MSR, requiring FCA to take action to control its dealer network and requiring FCA to provide DeCozen with adequate inventory of motor vehicles pursuant to the Dealer Agreements and requiring that FCA enjoin its other dealers from violation state advertising laws and other dealers' use of automobile brokers in violation of state law;

(h)    Awarding DeCozen all damages, compensatory and punitive;

(i)    Awarding court costs and reasonable attorney's fees; and

(j)    Awarding such other, further and additional relief to DeCozen as this Court deems just and proper.

### THIRD COUNT
### (Declaratory Judgment under 28 U.S.C. § 2201)

135.    DeCozen repeats and realleges the allegations set forth in the previous paragraphs as if fully set forth herein.

136.    FCA has infringed upon DeCozen's rights, breached its obligations under the parties' agreements, and violated state statutory law and state common law, including but not limited to the following:

(a)    FCA has breached the contractual rights arising out of the agreements between the parties;

(b)    FCA has violated the NJFPA by failing to provide adequate inventory and imposing unreasonable performance metrics upon DeCozen;

(c)    FCA violated the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221-1226, by failing to act in good faith in performing or complying with the terms and/or provisions of the agreements;

(d)    FCA has breached the Dealer Agreements by failing to undertake its obligations to monitor and control its dealer network to advance the excellence and reputation of FCA products by earning, holding and furthering the public regard for FCA and FCA dealers;

(e)    FCA has disclosed the identity of DeCozen's customers to other dealers, thereby disseminating DeCozen's proprietary information and trade secrets to competitors;

(f)    FCA knew or should have known that its conduct, or its intentional failure to act, would cause economic harm to DeCozen when it failed to control its dealer network, and when it disseminated advertisements for sales and service to a customer of DeCozen but directed the customer to visit a dealer other than DeCozen.

137.    DeCozen lacks full remedies at law.

**WHEREFORE**, DeCozen demands judgment against FCA as follows:

(a)    Declaring DeCozen in compliance with all of its obligations with respect to FCA's "Performance Metrics";

(b)    Declaring FCA in violation of DeCozen's rights arising out of the agreements between the parties;

(c)    Declaring FCA may not misuse DeCozen's confidential customer information or disseminate harmful information to DeCozen's customers that causes, and has caused, economic harm to DeCozen;

(d)    Declaring that FCA violated the Automobile Dealers Day in Court by failing to comply with the terms and/or provisions of the agreements between the parties;

(e)    Declaring that FCA breached the implied covenant of good faith and fair dealing, in failing to act to protect the FCA dealer network and allow larger, multi-franchise dealers to engage in practices in violation of New Jersey Law;

(f)    Declaring that FCA breached the implied covenant of good faith and fair dealing, in failing to act to protect the FCA dealer network and allowing unlicensed automobile brokers to partner with FCA dealers for the sale of new FCA motor vehicles and for failing to take action to prevent this practice;

(g)    Permanently enjoining FCA from violating their own policies and procedures with respect to the misdirection of customers, customer inquiries and sales leads;

(h)   Permanently enjoining FCA from advertising to DeCozen's customers in a manner that will cause economic harm to DeCozen;

(i)   Permanently enjoining FCA from its violations of law, breaches and misconduct;

(j)   Awarding DeCozen all damages, compensatory and punitive;

(k)   Awarding court costs and reasonable attorney's fees; and

(l)   Awarding such other, further and additional relief to DeCozen as this Court deems just and proper.

### FOURTH COUNT
### (Breach of Contract)

138.   DeCozen repeats and realleges the allegations set forth in the previous paragraphs as if fully set forth herein.

139.   FCA and DeCozen are parties to Dealer Agreements, and other agreements, that outline the rights and obligations of both parties.

140.   DeCozen has complied in good faith with all reasonable obligations placed upon it as a FCA franchisee under these agreements.

141.   Moreover, no provision of the agreements contemplates or permits FCA to act and/or fail to act as it has with respect to DeCozen.

142.   The agreements between the parties are contracts of adhesion and must be construed against FCA as the drafters.

143.   FCA have breached the express and implied terms and provision of the Dealer Agreements by, without limitation, the following:

(a)   injuring DeCozen's goodwill and reputation with customers by sending advertisements to those customers for sales or service at one of DeCozen's competitors;

(b)  arbitrarily discriminating against DeCozen and in favor of competing dealers in providing inventory of FCA motor vehicles;

(c)  failing to take action to control the FCA dealer network in advertising practices and/or in allowing its FCA dealers to use unlicensed automobile brokers for the sale of FCA products; and

(d)  failing to modify DeCozen's performance metrics to reflect conditions in the sales locality of the dealership.

144.  Further, in January 2016, FCA and DeCozen entered into an agreement by which FCA agreed to undertake a full review of DeCozen's Trade Zone, Sales Locality and MSR.

145.  FCA failed to meet its obligations under the January 2016 agreement.

146.  FCA's breaches are continuing to the present.

147.  Defendant's breaches of contract have substantially harmed DeCozen and have directly, and indirectly, caused economic damage to DeCozen.

**WHEREFORE**, DeCozen demands judgment against FCA as follows:

(a)  Declaring DeCozen in compliance with all of its obligations with respect to FCA's "Performance Metrics";

(b)  Declaring FCA in violation of DeCozen's rights arising out of the agreements between the parties;

(c)  Declaring FCA may not misuse DeCozen's confidential customer information or disseminate harmful information to DeCozen's customers that causes, and has caused, economic harm to DeCozen;

(d)  Declaring that FCA violated the Automobile Dealers Day in Court by failing to comply with the terms and/or provisions of the agreements between the parties;

(e)  Declaring that FCA breached the implied covenant of good faith and fair dealing, in failing to act to protect the FCA dealer network and allow larger,

multi-franchise dealers to engage in practices in violation of New Jersey Law;

(f)    Declaring that FCA breached the implied covenant of good faith and fair dealing, in failing to act to protect the FCA dealer network and allowing unlicensed automobile brokers to partner with FCA dealers for the sale of new FCA motor vehicles and for failing to take action to prevent this practice;

(g)    Permanently enjoining FCA from violating their own policies and procedures with respect to the misdirection of customers, customer inquiries and sales leads;

(h)    Permanently enjoining FCA from advertising to DeCozen's customers in a manner that will cause economic harm to DeCozen;

(i)    Permanently enjoining FCA from its violations of law, breaches and misconduct;

(j)    Awarding DeCozen all damages arising from FCA's breaches of contract, along with prejudgment and postjudgment interest thereon;

(k)    Awarding court costs and reasonable attorney's fees; and

(l)    Awarding such other, further and additional relief to DeCozen as this Court deems just and proper.

## FIFTH COUNT
### (Automobile Dealers' Day In Court Act, 15 U.S.C. §§ 1221-1226)

148.    DeCozen repeats and realleges the allegations set forth in the previous paragraphs as if fully set forth herein.

149.    FCA and DeCozen entered into Dealer Agreements and ancillary agreements, thereby creating a franchise relationship between the parties.

150.    The Agreements were in support of the franchise relationship between the parties and established DeCozen as a franchise dealer for FCA motor vehicles such as Chrysler, Jeep, Dodge and RAM.

151.    At all times relevant, FCA failed to act in good faith in performing and/or complying with the terms and provisions of the franchise dealer contracts, in violation of the Automobile Dealer's Day in Court Act, 15 U.S.C. §§ 1221-1226.

152.    More specifically, FCA failed to act in good faith with DeCozen by:

(a)    failing to honor their own written policies on sales standards;

(b)    deciding not to comply with the terms and provisions of the franchise agreements entered into between the parties;

(c)    upon information and belief, acting in a coercive or intimidating manner by contacting DeCozen's customers and informing them to conduct their transactions with another dealer;

(d)    by failing to provide DeCozen with a sufficient inventory of motor vehicles thereby preventing DeCozen from meeting performance metrics imposed upon it by FCA;

(e)    by failing to supervise and monitor its dealer network; and

(f)    upon information and belief, and in disregard for sales performance standards, by advertising the service department of another dealer to persuade DeCozen's customers to use the other dealer.

153.   At all times relevant, FCA acted unilaterally and coercively, through unfair and inequitable conduct, and not in a fair, legal, and honest fashion, thereby damaging DeCozen's business, sales, and reputation.

154.   By these coercive acts, FCA have violated their obligation of good faith under the Dealer's Day in Court Act, 15 U.S.C. §§ 1222-1226.

155.   These coercive acts have caused and continue to cause DeCozen very substantial economic injury.

156.   The harm, and future harm, done to DeCozen by FCA is not quantifiable solely by money damages, and the prospective loss of customers, business relationships and the franchises all constitute irreparable harm.

157.   For the irreparable harm, DeCozen has no adequate remedy at law.

158.   FCA is liable to DeCozen for damages and costs for the violations of the Dealer's Day in Court Act.

**WHEREFORE**, DeCozen demands judgment against FCA as follows:

(a)   Declaring DeCozen in compliance with all of its obligations with respect to FCA's "Performance Metrics";

(b)   Declaring FCA in violation of DeCozen's rights arising out of the agreements between the parties;

(c)   Declaring FCA may not misuse DeCozen's confidential customer information or disseminate harmful information to DeCozen's customers that causes, and has caused, economic harm to DeCozen;

(d)     Declaring that FCA violated the Automobile Dealers Day in Court by failing to comply with the terms and/or provisions of the agreements between the parties;

(e)     Declaring that FCA breached the implied covenant of good faith and fair dealing, in failing to act to protect the FCA dealer network and allow larger, multi-franchise dealers to engage in practices in violation of New Jersey Law;

(f)     Declaring that FCA breached the implied covenant of good faith and fair dealing, in failing to act to protect the FCA dealer network and allowing unlicensed automobile brokers to partner with FCA dealers for the sale of new FCA motor vehicles and for failing to take action to prevent this practice;

(g)     Permanently enjoining FCA from violating their own policies and procedures with respect to the misdirection of customers, customer inquiries and sales leads;

(h)     Permanently enjoining FCA from advertising to DeCozen's customers in a manner that will cause economic harm to DeCozen;

(i)     Permanently enjoining FCA from its violations of law, breaches and misconduct;

(j)     Awarding DeCozen all damages arising from FCA's breaches of contract, along with prejudgment and postjudgment interest thereon;

(k)     Awarding court costs and reasonable attorney's fees; and

(l)     Awarding such other, further and additional relief to DeCozen as this Court

deems just and proper.

## SIXTH COUNT
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

159.    DeCozen repeats and realleges the allegations set forth in the previous paragraphs as if

fully set forth herein.

160.    The Dealer Agreements, and other agreements, set forth the rights and obligations of

the parties.

161.    Implied in the agreements between FCA and DeCozen are the obligations to act in good

faith and to deal fairly.

162.    DeCozen has complied in good faith with all reasonable obligations placed upon it as

a FCA franchisee under these agreements.

163.    FCA has failed to act in good faith and has dealt with DeCozen unfairly.

164.    By these unlawful and injurious acts against DeCozen, FCA has breached the implied

duties of good faith and fair dealing.

165.    FCA's breaches of its implied duty of good faith and fair dealing has caused DeCozen

harm for which FCA is liable to DeCozen in damages.

**WHEREFORE**, DeCozen demands judgment against FCA as follows:

(a)     Declaring DeCozen in compliance with all of its obligations with respect to

FCA's "Performance Metrics";

(b)     Declaring FCA in violation of DeCozen's rights arising out of the

agreements between the parties;

(c)     Declaring FCA may not misuse DeCozen's confidential customer information or disseminate harmful information to DeCozen's customers that causes, and has caused, economic harm to DeCozen;

(d)     Declaring that FCA violated the Automobile Dealers Day in Court by failing to comply with the terms and/or provisions of the agreements between the parties;

(e)     Declaring that FCA breached the implied covenant of good faith and fair dealing, in failing to act to protect the FCA dealer network and allow larger, multi-franchise dealers to engage in practices in violation of New Jersey Law;

(f)     Declaring that FCA breached the implied covenant of good faith and fair dealing, in failing to act to protect the FCA dealer network and allowing unlicensed automobile brokers to partner with FCA dealers for the sale of new FCA motor vehicles and for failing to take action to prevent this practice;

(g)     Permanently enjoining FCA from violating their own policies and procedures with respect to the misdirection of customers, customer inquiries and sales leads;

(h)     Permanently enjoining FCA from advertising to DeCozen's customers in a manner that will cause economic harm to DeCozen;

(i)     Permanently enjoining FCA from its violations of law, breaches and misconduct;

(j)     Awarding DeCozen all damages arising from FCA's breaches of contract,

along with prejudgment and postjudgment interest thereon;

(k)     Awarding court costs and reasonable attorney's fees; and

(l)     Awarding such other, further and additional relief to DeCozen as this Court

deems just and proper.

## DEMAND FOR JURY TRIAL

DeCozen hereby demands a trial by jury on all issues of the Complaint so triable.

Respectfully submitted,

Eric L. Chase
Ronald J. Campione
BRESSLER, AMERY & ROSS, P.C.
325 Columbia Turnpike
Florham Park, New Jersey 07932
P.O. Box 1980
Morristown, New Jersey 07962
*Attorneys for the Plaintiff*
*Decozen Chrysler Jeep Corp.*

DATED:  January 6, 2022
6725694